## EDWARDS vs. FERGUSON, ET AL.

1. Joseph M. Ferguson was indebted to his brother, Thomas J. Ferguson, in the sum of three hundred dollars, for which he executed his note. Afterwards Joseph sold and deeded to Thomas a tract of land for one thousand dollars. The note not being present when the deed was executed, Joseph executed another note to Thomas for two hundred and sixty dollars, money advanced on the land, and Thomas executed to Joseph a note for four hundred and forty dollars, and died, in a short time afterwards, leaving the matter in this condition. Joseph, in such case, had no interest in the land subject to the payment of his debts.

## APPEAL from Franklin Circuit Court.

STEVENSON, for appellant.

I. That the judgment and decree of the lower court, should, from the evidence, have been for a title upon the judgment of the amount of money really due Thos. J. Ferguson at the time of his death for Joseph M. Ferguson.

II. That the court being satisfied that the transaction between the Fergusons was only a

mortgage, the complainant should only have been required to pay the amount of indebtedness due at the time of the death of Thos. J. Ferguson from Jos M. Ferguson; to be ascertained by deducting the amount of the note of $400, from the two notes of $300 and $260, and if a greater amount of indebtedness existed it was incumbent on him to show it.

II l' hat Francis Thomas was a competent witness, and should not have been excluded. Gamble vs. Johnston et al., 9 Mo, R. p. 605; 4 Bibb, 178, Steen vs. Sedden.

IV. That Jos. M. Ferguson, being interested, should have been excluded.

V. That the bill of complaint was improperly dismissed.

BIRCH, J., delivered the opinion of the court.

So much of the case presented by the record before us, as is deemed necessary to elucidate or explain the views we have taken of it, is substantially as follows :

On the 7th of May, 1841, Joseph M. Ferguson became indebted to his brother, Thos. J. Ferguson, who was a money lender, in the sum of three hundred dollars, for which he executed his note, payable at 12 months, with ten per cent. interest. On the 12th of January, 1842, as shown by deed properly executed and acknowledged, Joseph sold to Thomas certain lands in the county of Franklin, for the sum of a thousand dollars, acknowledging the receipt of the money in full. Whether this sale was or was not made in good faith, or for the purpose of sheltering the land from the other creditors, or whether the transaction partook more of the nature and essence of a mortgage than of an absolute sale, need not, in view of the course which the suit took in the court below, be here investigated or passed upon. For the same reason, and for others which will be alluded to in their more appropriate connection, the question as to the competency of Joseph, (the vendor,) to be a witness for the defendants, becomes comparatively an abstract instead of a practical one.

It appears from an exhibit incorporated in the answer of the administrator of Thomas, that on the 12th of [blank] 1842, Joseph executed another note to his brother, Thomas, for the sum of two hundred and sixty dollars. Assuming that the month which was omitted in the date of this last note was the same as that which is shown by the deed for the land, the true period of the transaction was the 12th of January, 1842.

It is admitted that after the conclusion of arrangement, whatever it may have been, and after he had made a trip to Franklin county in the latter part of the succeeding month, Thomas J. Ferguson, returned to his residence in St. Louis county, and in a day or two afterwards died. When, subsequently, his administrator demanded payment of his brother Joseph upon the two notes for five hundred and sixty dollars, the latter

produced a note executed by the deceased, "about the same time" the deed was made, for the sum of four hundred and forty dollars, and it was arranged with the administrator and the county court, to have the amount of that note off-set against the aggregate sum which was due upon the two notes in possession of the administrator.

The deed showing, as before stated, that the purchase money for the land was a thousand dollars, and this sum being produced exactly by adding together the sums of the two notes executed by Joseph to Thomas, and that of the one executed by Thomas to Joseph Ferguson; and the testimony being that one of the brothers was a money lender and the other a money borrower; the transaction is so nearly, if not quite explained, as to but naturally suggest the admissibility of testimony, which of itself would be insufficient for almost any other purpose:

It is for that reason that thus far we have in no respect drawn upon the testimony of Joseph M. Ferguson, not because we conceive him to have any legal interest in the determination of the suit which renders him incompetent as a witness, but because the record shews him to have sworn, in the first place, that the sale to his brother was an absolute and bona fide transaction—the four hundred and forty dollar note which he held against him when he died, being, with his own notes for five hundred and sixty dollars, which accident alone had prevented from being delivered up to him, the consideration for the land he had sold, yet, in the second place, to swear, also, and without the least explanation of what seems to be inexplicable, that "he did not know how to do," otherwise than to have the amount which his brother was then owing him, off-set against notes which he swears he did not owe to his brother! Whilst upon the unsustained testimony of a witness thus apparently ignorant or unprincipled, no court would be justified in rendering or maintaining a judgment or decree, it has already been intimated that the case may be otherwise when portions of his testimony may be used to explain, conffirm or elucidate other established facts and circumstances, which of themselves, as in this case, suggest and almost demonstrate the dates or the facts which even such a witness may be called to supply. In this case, therefore, it is only necessary to add, that the witness fully and circumstantially confirms the hypothesis which we would almost necessarily have assumed and acted upon, even without his explanation, namely: that the four hundred and forty dollar note, executed by his brother to him, was for the balance of the thousand dollars he was to give for the land. That it was at the house of his brother, in St. Louis county, on the 12th of January, 1842, when he

sold the land to his brother—promised to make the deed, which he did, on the same day, when he returned to Franklin county. That on the same day, before he started home to make the deed, he received of his brother two hundred and sixty dollars, (making in the whole $560,) for which he executed the second note that was found amongst his papers after his decease. That the whole matter was to have been arranged upon the occasion of a visit, which his brother was shortly thereafter to make to Franklin, but was not, because his brother had forgotten or neglected to bring along with him the two notes, and had not the money to pay the balance due on the tract of land. The deed having been made and recorded as had been agreed upon, it was arranged, for fear of accident, that his brother should execute his note to him for the four hundred and forty dollars still due upon the land, and that when he (Joseph) came down to St. Louis for it, he would also deliver up the two notes of his own, one for three hundred and the other for two hundred and sixty dollars.

As already stated, Thomas J. Ferguson died in a day or two after his return home, and his brother seems to have imbibed such inexplicable opinions as to the proper manner of explaining and adjusting their affairs with his administrator, as may have possibly contributed to mislead the plaintiff in the case before us. Be that as it may, having executions against Joseph, he bought, under them, the lands which he had thus transferred to his brother, filed and amended his bill against the widow, heirs and administrator, alleging that the land was in fact but mortgaged and claiming the right to redeem it. Upon the issues which were raised by the answer; there was testimony received by the chancellor below, upon which he decreed that, having the right to redeem as prayed for, the plaintiff should be permitted to do so within a reasonable given period, and that the land should vest in him upon paying to the estate of Ferguson the sum of eight hundred and fourteen dollars and fifty cents. This sum we find to be about the aggregate of the principal and interest of the two notes found amongst the papers of the deceased, up to the period when the presesent suit was commenced, and when the bill shows the money was brought into court. This decree the plaintiff neglected or refused to avail himself of, and at the succeeding term of the court, (against when it was to have been done) the bill of the complainant was dismissed, and complaining, as he does, both of the conditional decree alluded to, and of the final dismissal of his bill, he has brought the record to this court by writ of error.

We think the facts before the chancellor would have justified him in regarding the sale in question as an absolute, and consequently a final

one, and in dismissing, at once, the bill of the plaintiff. To our mind it is clear that any equity he may have possessed was rather against the fund which his suit has enabled him to discover, and which was definite and certain in amount, than against the land, the condition of which was at least more doubtful. Having, however, been offered the benefit of the most favorable decrer which the facts of the case would at all excuse or justify, he cannot be heard to complain that having rejected it, his bill was subsequently dismissed, or that in considering this case we have measurably omitted to notice the conflict of testimony upon the nature of the transfer or conveyance of the land. That fact, as already stated, was found as he desired it should be, and questions upon the reception of testimoney upon that issue thereupon ceased to be practical.

As to the rejection of the testimony of Mrs. Thomas, who was a witness to the deed, and who was called to prove certain declarations made by the vendor in the absence of the vendee, so far as these declarations were designed to show that the vendor was not parting with his land in good faith, but in fraud of his creditors, it has been seen, as above, that the plaintiff obtained a conditional decree permitting him to redeem, upon the very hypothesis to support which the testimony was offered. Upon that point, therefore, no more need be written; and as the authorities to which we have been referred do not sustain the objection to her exclusion, if it be intended that she might have testified to the declarations alleged to have been made by the vendor, as to the smaller amount of his indebtedness to the vendee, than the sum established by other and competent testimoney, we suppose it is not intended to rely upon the competency of such testimony to establish such a conclusion. If it was so designed, it is of course unnecessary to look for authority to negative a proposition which can have no where any authority to support it. Upon the whole case, therefore, we are satisfied that the plaintiff had no substantial reason to complain of the course pursued by the court below, and that its decree of dismissal should be, as it is, affirmed.